ANSONIA ASSOCIATES, Respondent, v ANSONIA RESIDENTS' ASSOCIATION et al., Appellants, et al., Defendants. (Action No. 1.)

ANSONIA ASSOCIATES, Appellant, v ANSONIA RESIDENTS' ASSOCIATION et al., Respondents, et al., Defendants. (Action No. 2.)

First Department, December 30, 1980

APPEARANCES OF COUNSEL

*Edward Heller* of counsel *(Heller & Peck,* attorneys), for appellants with respect to Appeal No. 1 and for respondents with respect to Appeal No. 2.

*Ralph L. Ellis* of counsel *(Charles E. Simpson* with him on the brief; *Shea & Gould,* attorneys), for respondent with respect to Appeal No. 1 and for the appellant with respect to Appeal No. 2.

OPINION OF THE COURT

FEIN, J.

Plaintiff landlord appeals dismissal of its complaint which sought to enjoin permanently defendant tenants' association and certain tenants in individual and representative capacities from collecting and retaining rent owed to plaintiff. Also under review on this consolidated appeal is a challenge by these defendants to the granting of a preliminary injunction restraining the collection of such rent and directing a turnover to the landlord of the rents already collected.

Plaintiff purchased the old Ansonia Hotel in June, 1978 after the previous owner had allowed the premises to deteriorate in the face of continued repair orders and fines levied by the Conciliation and Appeals Board (CAB). Plaintiff then embarked upon an extensive program to upgrade the hotel, expending in excess of $1,700,000 for improvements. An application was then made to the CAB for reinstatement of rent guideline increases on those apartments where defects had been cured. This application was granted after CAB inspection of the premises, rent guideline increases to be reinstated for certain specified apartments as of February 15, 1980.* A number of the tenants so affected felt there were still too many defects in the premises to warrant rent increases. They were joined in this view by defendant tenants' association, which exhorted tenants to engage in a rent strike by paying their rent into an escrow fund maintained by the association at a local bank.

Plaintiff brought this action against the tenants' association and against certain tenants in their individual and representative capacities to enjoin them from collecting and withholding rent, to stop the inducement to breach obligations to pay rent, and to account for and pay over rentals so collected and withheld. The depository bank, not a party to this appeal, was also joined anonymously in this action. Defendants' answer asserted breach of warranty of habitability, failure to state a cause of action, and an adequate,

---

* This CAB determination is currently under challenge in an independent proceeding.

indeed exclusive, remedy in Civil Court, Housing Part, under section 110 of the New York City Civil Court Act.

Plaintiff's motion for a preliminary injunction was granted to the extent of restraining the continued solicitation, collection and withholding of rental payments and directing that all rents collected be paid to and turned over to plaintiff. Special Term found irreparable harm in the diversion of moneys needed by the landlord in order to provide essential and contractual services. Special Term rejected defendants' contentions that summary proceedings provided an adequate remedy at law, and that plaintiff was financially able to withstand the shutoff of this income in the face of operating debts and obligations. Special Term directed an immediate trial.

After an unsuccessful defense motion at Special Term for summary judgment on the eve of trial, the trial commenced before Justice GAMMERMAN. At the conclusion of plaintiff's case, Trial Term granted the motion of the tenants and their association to dismiss. The Trial Justice vacated the preliminary injunction issued by Special Term. Justice GAMMERMAN properly ruled that law of the case did not bind him to follow Special Term's lead in granting a preliminary injunction (see *Gambar Enterprises v Kelly Servs.*, 69 AD2d 297). The purpose of a temporary injunction is merely to maintain the *status quo pendente lite* (*Tucker v Toia*, 54 AD2d 322; *Bond Stores v Turner*, 262 App Div 417, 419). However, the Trial Justice went on to rule that plaintiff had an adequate remedy at law in Housing Court, that plaintiff had not demonstrated irreparable harm, that plaintiff had not proven tortious interference on the part of defendant tenants' association, and that there was an identity between the association and its member tenants.

Trial Term erred for a number of reasons in finding that landlord had an adequate remedy at law in Housing Court to recover the rents collected by the association. Landlord had no remedy in Housing Court against the tenants' association. In this respect there was plainly no identity between the association and its member tenants. Landlord and the association did not stand in the relationship of landlord and

tenant, so there was no jurisdiction in the Housing Court. Landlord would have to bring 300 to 350 eviction proceedings against the respective tenants. If successful, landlord's remedies would be against the individual tenants to enforce any Housing Court judgment. Its sole remedy against the tenants' association would be by way of proceedings to enforce any money judgments obtained against any or all of the tenants. The proceedings would have to be against the tenants' association, an unincorporated association which could sue or be sued as a separate entity. This is plainly not an adequate remedy at law.

The notion that 300 to 350 separate eviction proceedings in the Housing Court would provide an adequate remedy at law as compared with the one action pending in Supreme Court before the Trial Justice was erroneous for an even more fundamental reason. Whether there is an adequate remedy at law is determinative of the issue of the right to equitable relief or the need for it instead of a money judgment. If adequate relief can be obtained by a money judgment there is no need for equitable relief. This has nothing to do with the court in which the action is brought. The remedy at law was available on the trial in Supreme Court in this very action, now subject of this appeal. The fact that landlord sought equitable relief in the form of a mandatory injunction directing a turnover of the rent moneys collected by the association is not dispositive. A mandatory injunction is not a proper remedy under the circumstances precisely for the reason that a money judgment would suffice with respect to the rent moneys already collected. Landlord made a prima facie showing of entitlement to a money judgment on the trial.

The record does not support landlord's allegations that it is entitled to a mandatory injunction founded upon its alleged cause of action for inducement to breach a contract because of the tenants' association's efforts in collecting the rent. There is no cause of action for inducement since it appears that the association is tenants' vehicle. This is not to say that the association and the individual tenants do not have separate legal identities. However, such separate identity does not warrant a mandatory injunction where a money judgment is available.

Trial Term overlooked or disregarded the fact that plaintiff had established a prima facie case entitling it to a money judgment in the absence of proof that the tenants had a defense by way of breach of warranty of habitability or other legal reason for nonpayment of rent. Plaintiff proved that (1) the rent had not been paid to it, and (2) the rent had been collected and was being held by the tenants' association. This was undisputed. Indeed it was proven out of the mouth of the president of the tenants' association and the asssociation's records. The tenants' association had no ownership or other right or title superior to that of the landlord to the moneys it had collected. Its sole purpose was to prevent landlord's collection of rent. As representative of the tenants, the association had asserted, "By paying this rent into a special account controlled by the tenants, we protect tenants from eviction, harassment and economic hardship."

Plainly the association escrow fund was rent money to which plaintiff was entitled unless tenants proved otherwise. Tenants were before the court through their association and some appeared individually and in a representative capacity. Plaintiff asserted it was in part bringing a class action against the tenants through their representatives named in the action, apparently the directors of the association. No steps were taken to certify the action as a class action. However, the record is clear that the attorneys representing the association and the individual tenants acted on behalf of all of the depositing tenants. Indeed, even before the motion to dismiss was granted, tenants' attorneys had indicated their intention to call the individual tenants as witnesses to prove their defense of breach of warranty of habitability under section 235-b of the Real Property Law. The Trial Court should have proceeded to hear the proof.

Trial Term's determination that plaintiff had an adequate remedy at law in the Housing Court constituted an abdication of the power of the Supreme Court. It amounted to a conclusion that somewhere between 300 and 350 landlord and tenant proceedings in the Housing Court constituted an appropriate remedy in the face of the well-settled rule that where an action is brought in the Supreme Court

seeking equitable relief, the case will not be dismissed if legal relief is available. Regardless of the fact that the pleading in form and prayer for relief seeks equitable relief, the court must grant the appropriate relief, even if it is only a money judgment *(Lane v Mercury Record Corp.*, 21 AD2d 602, affd 18 NY2d 889). The Supreme Court is a court of general jurisdiction empowered to grant the relief to which plaintiff is entitled even though it differs from the relief sought *(Kaminsky v Kahn*, 23 AD2d 231; *Mastrobuono v Lange*, 241 App Div 770). The court should retain jurisdiction to grant complete relief even though only legal relief is available *(Jamaica Sav. Bank v M. S. Investing Co.*, 274 NY 215; *Doyle v Allstate Ins. Co.*, 1 NY2d 439). The facts that plaintiff failed to move to conform the pleadings to the proof and that the prayer for relief sought a mandatory injunction are not fatal. The court may *sua sponte* make the appropriate determination. A money judgment rather than a mandatory injunction directing a turnover of the moneys held by the association was an appropriate remedy. "The power to conform rests in the trial court in the absence of a motion by a party, and also, in an appellate court *sua sponte*, if justice so dictates." *(D'Antoni v Goff*, 52 AD2d 973, 974; see, also, *Harbor Assoc. v Asheroff*, 35 AD2d 667, mot for lv to app den 27 NY2d 490; *Dampskibsselskabet Torm A/S v Thomas Paper Co.*, 26 AD2d 347, 352; CPLR 3017, subd [a]; 3025, subd [c].)

As stated in *I. H. P. Corp. v 210 Cent. Park South Corp.* (12 NY2d 329, 332) : "We have one court of general jurisdiction which administers *all* of New York law, be that law of legal or equitable origin. Therefore, defendants are mistaken when they suggest that a Justice of the Supreme Court of the State of New York cannot apply a particular principle of New York law to a case before him for decision where that principle is properly applicable to the facts as determined." (Emphasis in original.) The merger of law and equity in the Supreme Court, a court of original jurisdiction, requires that an action be retained for complete relief even though the relief sought be equitable and the only relief available be legal. However denominated, a pleading is sufficient and the court should retain jurisdiction over it if it states a case for relief either at law or in equity

*(Advance Music Corp. v American Tobacco Co.,* 296 NY 79).

Trial Term should have denied the motion to dismiss and continued with the trial of the action, affording the tenants an opportunity to prove landlord was not entitled to the rent by reason of its breach of warranty of habitability. The fact that not all of the tenants are parties to the action is not dispositive. It is plain they turned the rent over to the association as their representative. The association has no right superior to the landlord unless it can prove breach of the warranty of habitability or other defense justifying withholding the rent in whole or in part.

It is now clear that in such an action, if the breach of the warranty of habitability is established, the landlord may recover only the fair market value of the premises. As stated in *Park West Mgt. Corp. v Mitchell* (47 NY2d 316, 329, cert den 444 US 992) : "Inasmuch as the duty of the tenant to pay rent is coextensive with the landlord's duty to maintain the premises in habitable condition, the proper measure of damages for breach of the warranty is the difference between the fair market value of the premises if they had been as warranted, as measured by the rent reserved under the lease, and the value of the premises during the period of the breach."

That case is instructive in another respect. There, in the interest of disposition rather than delay, the landlord and tenants stipulated that the decision in one proceeding would bind the 400 tenants who pleaded as a defense in summary nonpayment proceedings that as a result of a strike the landlord had not provided essential services and had allowed conditions dangerous to the health of tenants to exist, amounting to a breach of the implied warranty of habitability. No reason appears why a similar stipulation procedure could not have been invoked in this action.

Accordingly, there should be a remand for a continuation of the trial to afford the tenants an opportunity to prove breach of warranty of habitability or other defenses, if any.

There remains for consideration the preliminary injunction issued by Special Term and vacated by Trial Term. We consider first so much thereof as directed that the moneys

already collected be paid over to the landlord. In the light of our direction that the trial proceed to a determination of the ultimate issue of the landlord's entitlement to these funds, it is plain there is now no basis for a direction that the money be paid over to the landlord prior to the final judgment in this action. Accordingly, the temporary injunction should be modified in this respect.

The conclusion in the partial dissent by Justices KUPFERMAN and BIRNS that the funds now held by the association should be paid over to the landlord forthwith does not give adequate recognition to the fact that defendants never had an opportunity to prove the breach of the warranty of habitability and the right to a setoff. Although this occurred because the trial court incorrectly granted defendants' motion to dismiss at the conclusion of plaintiff's case, the tenants are entitled to an opportunity to prove their case.

However, landlord is entitled to an order restraining the association from paying out any of the money to the depositing tenants or to anyone else. To rule otherwise would result in irreparable harm to landlord and impair the landlord's remedies in this action while it is pending. The separate motion by landlord addressed to this court to enjoin the association from withdrawing the funds from the depository banks and paying it out to the tenants or anyone else should be granted, such restraint to continue during the pendency of this action or until further order of the court.

So much of Special Term's order as restrained tenants' association from continued solicitation, collection and withholding of rental payments should be reinstated during the pendency of this action. From what has been written, it is plain that landlord has met the requisite tests for the issuance of such an injunction. The likelihood of success is demonstrated by the fact that the association is holding rent money to which plaintiff is prima facie entitled. The rent has not been paid although it has been fixed and approved by CAB. It remains for tenants to demonstrate the defense of breach of the warranty of habitability. The tenants' claim of landlord's liability for claims pre-existing the landlord's takeover in 1978 is of doubtful validity, except to the extent that those conditions continued at the time the rent was withheld. The voluntary payment of rent by the tenants

after this landlord took over the property, the prior CAB orders reducing the rents and the current CAB orders fixing and increasing the rent all militate against tenants' claim.

Landlord has made a clear showing that unless further solicitation and collection of the rent by the tenants' association is enjoined, landlord will suffer irreparable harm. If no injunction is granted the injury to the landlord will be continuous and a multiplicity of actions similar to this one will be required. An analogy may be made to cases where a continuing trespass is enjoined, even though money damages might be awarded for a single trespass *(Coatsworth v Lehigh Val. Ry. Co.,* 156 NY 451). Equitable relief is appropriate to avoid a multiplicity of actions *(Security Nat. Bank v Village Mall at Hillcrest,* 85 Misc 2d 771).

The record plainly demonstrates plaintiff's dilemma of how to continue meeting operating costs and providing essential services to all tenants when over 300 of them are withholding 100% of their rent and paying it to the association. This, in our opinion, constitutes irreparable harm to plaintiff. After all, the duties of the landlord, on the one hand, to maintain habitable premises, and of the tenants, on the other, to pay rent, are coextensive *(Park West Mgt. Corp. v Mitchell, supra).*

Moreover the landlord has shown that the association's collection and withholding of the rent jeopardizes landlord's ability to meet current operating expenses. Although landlord and its partners are not in financial extremis, this is not a basis for withholding equitable relief. A plaintiff is not required to show that it faces bankruptcy to entitle it to an injunction. Whether landlord has the ability to borrow money or to obtain a mortgage is not the test. Landlord has operated at a deficit and has borrowed money to meet operating expenses. It is not required to exhaust all its assets. A plaintiff seeking an injunction "is not required to show that otherwise rigor mortis will set in forthwith" *(Studebaker Corp. v Gittlin,* 360 F2d 692, 698).

The landlord, having expended substantial sums for renovation of the property, now faces the continuing obligation of providing essential services for the tenants. De-

nial of rental income is clearly a potentially irreparable injury warranting a preliminary injunction, notwithstanding the independent financial capabilities of plaintiff's partners.

The injunction we grant does not interfere with tenants' right to form an association. That right is recognized by the statute (Real Property Law, § 230). Nor does it deny any particular tenant his right to withhold rent for alleged breach of the warranty of habitability (Real Property Law, § 235-b; *Park West Mgt. v Mitchell*, 47 NY2d 316, *supra; Morbeth Realty Corp. v Velez*, 73 Misc 2d 996). Nor does it preclude one third or more of the tenants from a proceeding to deposit rents under RPAPL article 7-A on the grounds set forth in the statute respecting uninhabitability (RPAPL 770).

We enjoin the association on the ground that it is collecting the rent, in its own words to "protect tenants from eviction, harassment and economic hardship", while it tells the court it cannot be required to pay the rent over to the landlord or to respond in damages or otherwise for such rent. The association has shown no right to the money it has collected and no right to collect the rent in the future. The equities preponderate in favor of the landlord.

In their partial dissent Justices SANDLER and CARRO suggest it is not in the landlord's interest for a court to grant such injunction *pendente lite* because it "eliminates a very desirable device for insuring that the rent money will in fact be available if and when the landlord ultimately recovers a judgment." Although this may well be, the dissent ignores the fact that the landlord seeks such an injunction, presumably aware of the suggested consequences. Of course the landlord's wishes are not dispositive, but we should not deny the relief to which the landlord is entitled merely because we think the landlord would be better off without it. The contention that the tenants would be better served by denial of the injunction is premised on the notion that collection of the rent by the association would insure the availability of funds which tenants might not otherwise have to pay any judgment in favor of the landlord. This overlooks the fact that the tenants have apparently sought a return

of their money from the association, which attempt we have enjoined. Moreover, the dissent ignores the dynamics. Presumably the landlord will be entitled to the accruing rent while the action is pending. The question of habitability will depend on the situation as it exists as the rent accrues. If the rent is not paid, the landlord's only recourse will be by dispossess proceedings in the Housing Part of the Civil Court against the individual tenants, the very procedure which the dissent elsewhere proposes as the desirable procedure. The future issues will be "appropriately litigated" in that court as the dissent recommends.

The order, Supreme Court, Special Term, New York County (SINCLAIR, J.), entered June 13, 1980, granting plaintiff's application for a preliminary injunction, vacated by Trial Term, should be modified on the law and the facts by striking so much thereof as directs the tenants' association to turn the rents already collected over to the landlord, and as so modified the order should be reinstated and affirmed, without costs.

The order and judgment, Supreme Court, Trial Term, New York County (GAMMERMAN, J.), entered August 4, 1980, should be reversed on the law and the facts, without costs, the motion to dismiss the complaint should be denied, the order vacating the temporary injunction should be modified as herein indicated, and the action remanded for a continuation of the trial on a basis not inconsistent with this opinion.

Landlord's separate motion addressed to this court for an order enjoining the withdrawal of the escrow moneys by the tenants' association during the pendency of this action should be granted, without costs.

KUPFERMAN and BIRNS, JJ. (concurring and dissenting in part). The opinion of FEIN, J. well states the situation, and we can fault it in only one respect.

We would reinstate the preliminary injunction (SINCLAIR, J.) and direct that all rents collected be paid to and turned over to the plaintiff. The excellent analysis of FEIN, J., which leads to the conclusion that future rent must be paid directly to the landlord, applies with the same force to past rent held by the tenants' association. The recrimina-

tions with respect to the previous landlord are not here involved. If the landlord must have the future rent payments in order properly to fulfill its function, it should also have the moneys that are held in escrow. The argument of the tenants that the landlord has sufficient assets, and therefore does not require equitable relief, actually balances the scales in favor of the payment to the landlord, because it demonstrates that the landlord is good for the money in the event the tenants should be successful in their contentions that there was a breach of the warranty of habitability.

SANDLER, J. (concurring and dissenting in part). I am in general agreement with Justice FEIN'S able analysis of the troublesome issues presented on this appeal, except with regard to his conclusion that the Ansonia Residents' Association (Association) should be enjoined "from continued solicitation, collection and withholding of rental payments". I do not understand the legal basis for this injunction, the practical consequences of which seem to me certain to be harmful both to the landlord and to the tenants.

The injunction is supported on the ground that the landlord has demonstrated that it will otherwise suffer irreparable damage. If this contention is correct, which I doubt, the injunction does not meet the problem, for it does not insure that the landlord will in fact receive any additional rent during the course of this litigation. The injunction simply eliminates a very desirable device for insuring that the rent money will in fact be available if and when the landlord ultimately recovers a judgment.

If the tenants have a legal right under section 235-b of the Real Property Law to withhold rents on the claim that there has been a breach of the warranty of habitability, which Justice FEIN'S opinion clearly and properly recognizes, I cannot agree that they may not make arrangements under which a responsible official of the Association periodically collects the rents and places them in an escrow account. Such arrangements are obviously beneficial both to landlords and tenants. The landlords are assured that they will be able to recover ultimately on any judgment awarded in their favor. Individual tenants are protected against the

possibility that they will not have the funds available to pay such a judgment.

I appreciate that the injunction reflects a response to what is perceived to be a particular problem presented by peculiar aspects of this lawsuit and is not intended as a general disapproval of an obviously desirable procedure. However, the opinion as written may be misinterpreted as representing such a disapproval and, if so, the consequences are sure to be unfortunate.

One other aspect of the case merits comment. Although I do not dissent from Justice FEIN's conclusion that under the circumstances of this case the Supreme Court should have retained jurisdiction to try the issues that were presented, I find the question much closer than is suggested in his opinion.

Section 110 of the New York City Civil Court Act, establishing a Housing Part in the Civil Court and vesting that part with broad powers, clearly contemplates that issues of the kind presented here should be litigated in the first instance in that specialized part. It should be noted that the Housing Part is explicitly empowered in subdivision [b] of section 110 to "consolidate all actions and proceedings pending in such part as to any building."

Nor do I see any difficulty in the exercise of jurisdiction by the Housing Part in the circumstance that the greater part of the withheld rental moneys are deposited in an escrow account maintained by the Association. It is surely very improbable that the Association would withhold such moneys in the event of a judgment for the landlord for all or part of that which is maintained in the Association account.

It may well be that the procedural history of this lawsuit made it preferable for the Supreme Court to retain jurisdiction when the matter came on for trial. I do not think this determination, however, should be interpreted as denying to the Supreme Court, in appropriate cases, the discretion to determine that the issues are more appropriately litigated in the very court that was explicitly set up by statute to deal with precisely such questions.

KUPFERMAN, J. P. and BIRNS, J., concur in part and dissent in part with FEIN, J., in an opinion; SANDLER and CARRO, JJ., concur in part and dissent in part in a separate opinion by SANDLER, J.

Order, Supreme Court, Special Term, New York County, entered on June 13, 1980, modified, on the law and the facts, by striking so much thereof as directs the tenants' association to turn the rents already collected over to the landlord, and as so modified, the order is reinstated and affirmed, without costs and without disbursements.

Order and judgment (one paper), Supreme Court, Trial Term, New York County, entered on August 4, 1980, reversed, on the law, and on the facts, without costs and without disbursements, the motion to dismiss the complaint denied, the order vacating the temporary injunction modified as indicated in the opinion of this court filed herein, and the action remanded for a continuation of the trial on a basis not inconsistent with this court's opinion.